IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KENNETH LAMOTTE,

      Plaintiff,                      No. CIV S-06-0792 JAM KJM P

     vs.

MORENO, et al.,

      Defendants.              FINDINGS & RECOMMENDATIONS

_____/

        Plaintiff is a state prison inmate proceeding pro se with a civil rights action under 42 U.S.C. § 1983, alleging that he was placed on disciplinary status because he refused, on religious grounds, to comply with the CDCR's grooming standards; that supervisory personnel failed to train correctional officers on the appropriate guidelines for an inmate's religious practices and failed to give plaintiff relief from the improperly imposed discipline; that defendant Moreno retaliated against plaintiff for attempting to seek relief from the grievance system; and that defendant Schwartz enforced a policy that violated the Religious Land Use and Institutionalized Persons Act (RLUIPA). These events were alleged to have occurred in 2004 and 2005.

        Defendants have filed two motions to dismiss, arguing that plaintiff has failed to exhaust his administrative remedies; that his complaint fails to state a claim; and that they are

1

entitled to qualified immunity. The court finds that plaintiff has failed to exhaust his administrative remedies, as explained below.

The Prison Litigation Reform Act (PLRA) provides that "no action shall be brought with respect to prison conditions under section 1983 of this title, . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Conditions of confinement" subject to exhaustion have been defined broadly as "the effects of actions by government officials on the lives of persons confined in prisons." 18 U.S.C. § 3626(g)(2); Smith v. Zachary, 255 F.3d 446, 449 (7th Cir. 2001); see also Lawrence v. Goord, 304 F.3d 198, 200 (2d Cir. 2002). Proper exhaustion of available remedies is mandatory, Booth v. Churner, 532 U.S. 731, 741 (2001), and "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ." Woodford v. Ngo, 548 U.S. 81, 90 (2006). As noted, the statute requires an inmate to exhaust those remedies that are available; for a remedy to be "available," there must be the "possibility of some relief. . . ." Booth, 532 U.S. at 738. The grievance process must be completed before the inmate files suit; exhaustion during the pendency of the litigation will not save an action from dismissal. McKinney v. Carey, 311 F.3d 1198, 1200 (9th Cir. 2002).

California prison regulations provide administrative procedures in the form of one informal and three formal levels of review to address an inmate's claims. See Cal. Code Regs. tit. 15, §§ 3084.1-3084.7. Administrative procedures generally are exhausted once a plaintiff has received a "Director's Level Decision," or third level review, with respect to his issues or claims. Cal. Code Regs. tit. 15, § 3084.5.

Finally, to satisfy the exhaustion requirement, a grievance must alert prison officials to the claims the plaintiff has included in the complaint. Porter v. Nussle, 534 U.S. 516, 524-25 (2002) (purpose of exhaustion requirement is to give officials "time and opportunity to address complaints internally before allowing the initiation of a federal case"); Brown v. Sikes,
/////

212 F.3d 1205, 1209 (11th Cir. 2000) (§ 1997e(a) requires that a prisoner provide as much relevant information as he reasonably can in the administrative grievance process).

A motion to dismiss for failure to exhaust administrative remedies prior to filing suit arises under Rule 12(b) of the Federal Rules of Civil Procedure. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). In deciding a motion to dismiss for a failure to exhaust non-judicial remedies, the court may look beyond the pleadings and decide disputed issues of fact. Id. at 1119-20. Defendants bear the burden of proving plaintiff's failure to exhaust. Id. at 1119.

Defendants have submitted the declaration of M. Cry, appeals coordinator at the California Medical Facility (CMF), who avers that between October 24, 2004 and April 12, 2006, plaintiff submitted eight grievances that were not screened out for procedural deficiencies; none of these eight grievances challenged the CMF grooming policy or any religious discrimination against plaintiff. Declaration of M. Cry (Cry Decl.) ¶¶ 3, 5. Defendants have also presented the first pages of these grievances and described their outcomes:

1. Log No. 04-M-2190, dated December 10, 2004, concerning missing property; did not make it past the first level. [Second] Motion to Dismiss (Docket No. 34), Ex. A;

2. Log No. 04-M-2256, dated December 14, 2004, complaining that officers told him to remove a hat before entering the dining hall; did not make it past the first level. Id., Ex. B;

3. Log No. 04-M-2335, dated December 30, 2004, seeking the return of property; did not make it past the first level. Id., Ex. C;

4. Log No. 05-M-308, dated February 10, 2005, seeking the return of a radio and headphones; also did not make it past the first level. Id., Ex. D;

5. Log No. 05-M-1277, dated June 23, 2005, challenging the manner in which the cable television programming is handled; denied at the first level. Id., Ex. E;

6. Log No. 05-M-1586, dated July 14, 2005, alleging that defendant Moreno verbally abused plaintiff when he asked Moreno about cable television programming; denied at the Director's Level. Id., Ex. F; Declaration of N. Grannis (Grannis Decl.) ¶¶ 4-5;

7. Log No. 06-M-290, dated January 11, 2006, seeking the return of property; denied at the first level. [Second] Motion to Dismiss, Ex. G; and

/////

3

       8.       Log No. 06-M-451, dated February 26, 2006, alleging that plaintiff was placed improperly in the bridge program; withdrawn at the first level. Id., Ex. H.

Cry Decl. ¶ 5. In his opposition, plaintiff does not present any evidence of exhaustion, but rather argues only that his rights were violated. In support of his amended complaint, which was signed under the penalty of perjury, plaintiff did provide a copy of a grievance, dated July 26, 2005, which was not assigned a log number. In this grievance, plaintiff complains that defendants Pappas and Moreno placed him on C-status because of his failure to comply with CDCR grooming standards. Amended Complaint (Am. Compl.) at 27.[1] Attached to this form is a "Notice of Classification Hearing" dated November 23, 2004, noting that plaintiff's status might be changed at the upcoming hearing and warning him to comply with the grooming standards. Id. at 28. The grievance was denied at the informal level by defendant Pappas. Id. at 27.

       Plaintiff has also provided a "screen-out" notice, dated February 23, 2006, which rejected some unidentified grievance for several reasons. Id. at 26. One box checked says "you are appealing an action not yet taken." Written next to this box is "C/C property issue CMF 05-M-308; this notation suggests that the appeals coordinator meant to check the "duplicate appeal" box, since the handwriting references an already-filed grievance. See [Second] Motion to Dismiss, Ex. D. Another box is checked, notifying plaintiff that he had exceeded the time limit for filing a grievance; written next to the printed legend is "UCC C/C placement 11-23-04." The printed text by a third checked box informs plaintiff that he has not demonstrated that the appeal issue "adversely affected your welfare." Written next to this is "grooming standards effective date + public approval 3-30-06." Nothing shows when plaintiff submitted this grievance to the appeals coordinator.

/////

---

[1] The court refers to numbers assigned by its CM/ECF system.

4

1    This screen out-notice shows that plaintiff's attempt to grieve his disciplinary
2  status was screened out as untimely, apparently based on the fact that he was placed on
3  disciplinary status in 2004. However, plaintiff had received a rejection on the merits on the
4  informal level in 2005. Am. Compl. at 27. Nothing in the regulations cited or in the declarations
5  provided by the defendants suggests that the appeals coordinator has the authority to make a
6  retroactive finding that the grievance was untimely at some lower level and thus reject an
7  otherwise timely appeal at the second level of review. The language of section 3084.6(c)
8  suggests otherwise: "An appellant must submit the appeal within 15 working days of the event or
9  decision being appealed, or of receiving an unacceptable lower level appeal decision."

10    Nevertheless, it does appear that plaintiff's appeal from the informal level was not
11  timely. Under 15 Cal. Code Regs. § 3084.6(b)(2), action must be taken at the first level within
12  thirty days of the date the grievance is submitted. In this case, the screen-out rejection was in
13  February 2006, even though the grievance had been denied at the informal level on August 26,
14  2005. Am. Compl. at 26, 27. Thus, it appears plaintiff did not timely submit this grievance for
15  the first level of review and thus failed to comply with "the agency's deadlines." Woodford, 548
16  U.S. at 90.

17    Plaintiff also has attached a copy of a memo from defendant Veal, responding to
18  some correspondence plaintiff had sent, protesting the actions taken as a result of his refusal to
19  abide by the grooming requirements. Am. Compl. at 30. This letter, however, does not satisfy
20  the exhaustion requirement: nothing in the regulations allows an inmate to bypass the grievance
21  process by sending a letter directly to the warden. Id. ("Proper exhaustion demands compliance
22  with an agency's deadlines and other critical procedural rules because no adjudicative system can
23  function effectively without imposing some orderly structure on the course of its proceedings.").
24  Even if such circumvention were allowed, there is nothing in the record showing that plaintiff
25  sought Director's Level review following Veal's response.
26  /////

IT IS HEREBY RECOMMENDED that:

1. Defendant's second motion to dismiss for failure to exhaust (docket no. 34) be granted; and

2. Defendant's motion to dismiss for failure to state a claim (docket no. 27) be denied as moot.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: January 23, 2009.

_____
U.S. MAGISTRATE JUDGE

2

lamo0792.57